This appeal involves a claim based on an open account and account stated.
The underlying suit arose out of a subcontract that Industrial Corrosion Control, Inc., an Alabama corporation ("ICC"), had with ENI Engineering Company, a Pennsylvania corporation ("ENI"), to apply a finishing coat of paint to a coal dryer. Under the subcontract, ENI agreed to pay ICC $96,203 to preclean a coal dryer and apply a finishing coat of paint. The finishing coat specified by ENI was a Devoe urethane product, which ICC had purchased from Grow Group, Inc., a New York corporation, d/b/a Devoe Protective Coatings ("Devoe"). After the precleaning had been done and after a portion of the finishing paint had been applied, an adhesion problem developed between the finishing coat and the base coat. To correct that problem, Devoe recommended the use of a particular product for cleaning the surface of the coal dryer in order to promote adhesion of the finishing coat. ENI authorized ICC to undertake additional work to correct the problem, with the understanding that ENI intended to withhold payment of all materials "until such time that the paint problem" was resolved. Thereafter, ICC incurred additional expenses for the supplies it purchased from Devoe to complete the correctional work. ICC billed ENI $89,063.25 for the additional work and expense of materials. Of the total amount allegedly due under the contract with ICC (a total of $185,266.25 — $96,203 for work performed under the original contract and $89,063.25 for the correctional work performed), ENI paid ICC $124,762.12, leaving a balance allegedly due of $60,504.13.[1] ICC sued ENI for $60,504.13. The case was removed to the United States District Court for the Northern District of Alabama, Northeastern Division. ENI joined Devoe as a third-party defendant, alleging that the adhesion problem was due to Devoe's negligent design of materials, misrepresentation of fact, and breach of warranty. Specifically, ENI asserted that if the trial court found ENI "liable to [ICC for breach of contract], then such liability [was] premised on the conduct of [Devoe]," and ENI demanded "judgment against [Devoe] for all sums that may be adjudged against [ENI] in favor of [ICC]." ICC amended its complaint to add Devoe as a defendant, alleging breach of implied and expressed warranties, liability under the Alabama Extended Manufacturer's Liability Doctrine, and negligent and wanton manufacture of cleaning products; and seeking damages for loss of profits and damage to "its good will and business reputation." Devoe answered ICC's claims, alleging, among other things, that ICC's own negligence caused the adhesion difficulties.
After initial discovery had been conducted, ICC moved for a summary judgment against ENI. At the pretrial conference on ICC's motion for summary judgment, the district court entered a judgment for ICC, holding that ICC had "performed its end of the bargain" and therefore was entitled to a judgment, as a matter of law, against ENI for $60,504.13 plus interest and costs. Simultaneously, the district court held that because "counsel for [ICC] stated that he would dismiss [the claims against Devoe] if [ICC] prevailed on its motion for summary judgment," all of ICC's claims against Devoe were voluntarily dismissed without prejudice.[2] Thus, the only remaining *Page 936 
claims were the claims between ENI and Devoe, and those claims were dismissed with prejudice by stipulation of the parties on November 2, 1989.
Devoe filed this suit, seeking payment of $23,559.86 (the amount due on open account for the Devoe products used by ICC in its subcontract with ENI). ICC moved for a summary judgment, which the trial court entered.[3] Devoe appeals.
According to Devoe, "ICC's dismissal of its claims against Devoe [was] pivotal" because "[t]hat dismissal foreclosed Devoe's opportunity to counterclaim against ICC." Devoe argues that its claim against ICC based on open account and account stated did not have to be filed as a compulsory counterclaim and that the claim was not barred by the doctrines of resjudicata or collateral estoppel. Therefore, Devoe argues, the trial court erred in entering the summary judgment for ICC.
According to ICC, although in the prior federal action Devoe asserted, among other things, the affirmative defense of contributory negligence, Devoe did not assert a claim for the sums ICC owed on open account and account stated. ICC argues, therefore, that the trial court properly entered the summary judgment in its favor because, it says, Devoe's claim was barred by the compulsory counterclaim rule and the doctrines ofres judicata and collateral estoppel.
The primary purpose of the compulsory counterclaim rule is to avoid circuity of actions and to enable the court to settle all related claims in one action and thereby avoid a wasteful multiplicity of litigation on claims that arose from a single transaction or occurrence. See 6 Wright Miller Kane,Federal Practice and Procedure: Civil, § 1409. Rule 13(a), Fed.R.Civ.P., dealing with compulsory counterclaims, reads in pertinent part as follows:
 "A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction."
Specifically, as indicated by the Advisory Committee's Note to Rule 13, a compulsory counterclaim would be barred if it is not presented in the original action and that original action proceeds to judgment. 6 Wright Miller Kane, at § 1417, n. 4, p. 131.
In this case, even though Devoe had not asserted its counterclaim before the dismissal, it could have done so pursuant to Rule 13(f), Fed.R.Civ.P., if ICC had not agreed to dismiss its claims against Devoe in the district court during the pretrial conference. However, the district court dismissed without prejudice ICC's claim against Devoe, without a trial on the merits and without proceeding to judgment. Therefore, we hold that Devoe is not barred by the compulsory counterclaim rule from bringing this suit against ICC. Because there was no final judgment rendered in the district court, the doctrine ofres judicata does not bar Devoe's claim against ICC based on open account and account stated. Whisman v. Alabama Power Co.,512 So.2d 78 (Ala. 1987). Likewise, because no issue or issues were actually litigated in the prior federal action between Devoe and ICC, the doctrine of collateral estoppel does not bar Devoe's claim against ICC in this action. Id.
For the foregoing reasons, the summary judgment should not have been entered under the compulsory counterclaim rule or under the doctrines of res judicata or collateral estoppel. Furthermore, although ICC did not present a prima facie case in defense of Devoe's claim based on open account and account stated, Devoe presented sufficient evidence to create a jury question on that issue. *Page 937 
Therefore, the summary judgment for ICC was not proper, and we reverse that judgment and remand the case for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
HORNSBY, C.J., and SHORES, ADAMS, STEAGALL, KENNEDY and INGRAM, JJ., concur.
[1] According to the affidavit of Howard Cox, president of ICC, the $60,504.13 balance that ENI owed ICC was comprised of "$23,559.86 for materials and $36,944.27 for labor."
[2] The district court did not expressly dismiss ICC's claims against Devoe without prejudice; however, pursuant to Rule41(a), Fed.R.Civ.P., unless otherwise stated in the notice of dismissal, the dismissal is without prejudice (subject to certain exceptions not applicable in this case).
[3] We note that the trial court did not state its reasons for entering a judgment in favor of ICC; however, we will affirm the judgment if there are any proper grounds. Tierce v.Macedonia United Methodist Church, 519 So.2d 451 (Ala. 1987).